Your Honor, the second case of the morning is called 219-0055. Village of Campton Hills v. Comcast of Illinois. There is also a cross-claim and a cross-appeal in this matter by Comcast v. Campton Hills. On behalf of the Atomic Cross F3 in King County, Mr. Joseph Golders. On behalf of Comcast, Mr. Ronald O. Grosner. On behalf of Campton Hills, Mr. Adam B. Simon. And the parties have to reconvene themselves to the schedule that is before the Justices. Thank you. Is it Mr. Lovis? You may proceed, Counselor. May it please the Court, Assistant State's Attorney Joseph Lovis and Assistant State's Attorney Megan Baxter, on behalf of King County. Since 1988, King County and its cable television franchise providers have consistently, by agreement, continued their franchise agreements from year to year and from time to time. The effect of those agreements to extend, which have been memorialized by their conduct over the years, is the issue that we're primarily asking the Court to review. Campton Hills, in 2007, incorporated as a new entity. Provisions in the county's code related to the assessment and award and collection of franchise fees for Campton Hills is the chief issue here. The trial court decision that we're appealing from did not give effect to the course of conduct of King County, and in this case Comcast, the cable provider. The trial court found that the franchise agreement ended on November 30th of 2007, the year that Campton Hills was incorporated. The county's position is that by course of conduct since 1988, those franchise agreements had been extended and that, in fact, there is a five-year provision in the applicable county's code provision that we believe and the trial court believes applies here where the state legislature set up a bar that counties can continue to collect in annexations the franchise fees, but for a maximum of five years, and then the fees would go in annexations. Five years or expiration of an agreement? That's correct, Judge. Our position on this, to be clear, is that the course of conduct is the agreement. So that trumps any written word terminating an agreement, that the course of conduct should override that. That's correct, Judge. Basically, your position. The trial court went the other way. Correct. Got it. Absolutely. But if that's the case, then why pass? You passed a resolution after the November 30th date to extend this franchise agreement, correct? That's correct, Judge. And so in reality, if that is the way the trial court interpreted the termination date of the franchise or the expiration date of the franchise, then you wouldn't be entitled to the additional five years. That's correct, and that was the trial court's position, that upon incorporation, the county and Comcast's ability, authority to extend was extinguished at that point, when Campbell Hills was incorporated. We believe that the statute in this case, the legislature had anticipated this type of situation coming up by putting in a hard bar of five years. And we believe that's also, as Comcast pointed out in their brief, consistent with the federal law, which bars a franchise provider from continuing to operate in a jurisdiction if they don't have a franchise agreement. And so that this, our view that this was continued from time to time, year to year, it should override the trial court's decision. Okay, it's consistent with the federal statute, says Comcast. But continued based on course of conduct. Correct. Judge, absolutely. We are here basing our argument on a course of conduct, and that we believe that trial courts do not have the authority to override the party's private agreements that are reflected in their course of conduct over years, especially in this case where you have a course of conduct that's been extended since 1988. There isn't any dispute that Comcast has been providing as a successor of interest services in the county and paying their franchise fees. So we believe that it's clear that the trial court in this case picked a single date off of a single resolution and is applying that, okay, to bar the county from collecting their franchise fees, and that, in fact, the trial court did not apply that to any other of the existing documents. Okay. Does the statute? I'm sorry for the issue. No, that's fine, Judge. Does the statute say anything about incorporation wherein after the property in question is incorporated that there will be a five-year hiatus, or there will be anything relative to property that isn't necessarily annexed so much as it's incorporated? It does not, Judge. And our research in the legislative history of this indicates no discussions. We have not been able to find any discussions that took place in Springfield about this particular issue. On this issue, which Camden Hills is appealing, the applicability of that statute I'm referring to, which is 1095 in the county's code, refers to annexations. It does not refer to incorporations. The trial court did make a decision on that threshold issue here, and essentially the trial court found that it did apply to incorporations, and the reason for that, I'm paraphrasing here, but analytically incorporation and incorporation are functionally the same thing, in that they are just a transfer of governmental authority from, you know, one unit of government to another unit of government, and the trial court's belief that it would be inconsistent and illogical to extend the five-year payment period. Are you saying the trial court found that the statute was persuasive, or are you saying that the statute applied to incorporations? The trial court found that the statute applied to incorporations. Camden Hills is separately appealing that in their brief. That decision is being longly decided by the trial court. Clearly, we believe the trial court logically made the correct decision in applying this to incorporations, but the court is correct that the actual statute does not refer to incorporations. If the statute doesn't apply to incorporation, then how could the five-year hiatus or the five-year term relating to extending your contract with Comcast to a maximum of five years have any application? We believe in that case, Judge, that the argument advanced by Camden Hills that the municipal code provisions related to cable fees would be inapplicable for the simple reason that this is not an extension into an incorporated municipality. This is not, say, King County trying to extend a franchise agreement into an incorporated municipality. Rather, under the annexation statute, it contemplates that the annexation takes subject to preexisting agreements that the county has and that analytically, an incorporation, freshly minted, so to speak, is an overlay on top of preexisting agreements. And we believe that this is not a case of King County extending into an existing municipality. And so we believe that it would be incorrect analytically to apply the provisions of the municipal code in this case. I completely agree that this is a novel situation that was not addressed in the statute, but it is a preexisting agreement the county is not extending into. The incorporation is taking place on top of preexisting agreements, and we believe those preexisting agreements should be given effect as embodied in the course of conduct over the years. We also believe this is consistent completely with the federal statutes that require the franchise agreement to, even in an expired case, to be continued on their terms until a new one is executed. We also believe that's consistent with the idea in the state statute that the preexisting agreements are given effect to a certain point. The second point we're bringing to the Court's attention is we repeatedly raised the issue that dating back to the original agreement in 1988 with cable providers, there's an indemnification clause. We believe that this should be remanded to the trial court for further proceedings to flesh out the record on that. The trial court did not address our indemnification claim against Comcast. Simply put, we believe that there is law indicating that indemnification claims can't be asserted against parties for their own negligence. We believe that the record indicates that part of the problem in this case on the conflicting agreements and such not among the parties is brought about by the fact that Comcast executed a separate agreement with Camp and Hills. At the same time, they had a continuing agreement, and we're continuing our course of conduct in paying their franchise fees to Kane County. That this conflict is brought about by their own negligence and not ours. Well, Comcast believed it owed somebody fees, right? Correct. So paid you some fees, paid Camp and Hills some fees. Is that basically what they did? Correct. How is that negligent? Well, we have an indemnification clause, and this mess has been caused by their actions, and we believe that the indemnification clause should be applied against them for this, and that they should take nothing by this. So in addition to any fees and costs that we've incurred in this litigation, and we believe that their argument that they've advanced that, well, the indemnification clause only applies to XYZ or construction or installation or operations. Well, our response to that is quite simply that operations are basically part and parcel of what this case is about, the financial operations. And, in fact, if you do not have financial operations or sending out bills or paying fees, you would not have an installation. So that's part of the indemnification clause, which also was very broad and stated that the indemnification was basically recited some items, including operations, but not limited to. And the not limited to, we believe, brings this within the area that we can assert that they should not take anything from this, since they're the ones that caused this. George, do you have a question? Yeah, I do. Let's assume that you're correct about the indemnification language, that it removes all limitations on indemnification in the case that we have here. Would you explain to this Court how franchise fees are associated with the granting of a franchise, which is the language in your indemnification provision? Well, the franchise fees are required to be set at, by federal statute, at a maximum certain percentage. The franchise fees, okay, we would state that have been paid to the county, were lawfully paid to the county under a continuing course of conduct, and that they were rightfully received by the county. That this particular case involving Campton Hills' claim against Comcast, which is a separate claim because Campton never brought a direct claim against Kane County on this, that is Comcast's problem. They created the problem contractually. We had a continuing course of conduct with them for many, many years. We rightfully received those fees. So we believe any claim they're making here is basically not supported by the facts and not supported by their own conduct over time. So if I hear you correctly, what you're saying is, is that you believe Comcast is required to pay you a franchise fee that you would no longer be entitled to if we were to rule that the incorporation, in fact, coupled with the expiration of your franchise agreement, you would not be entitled to. Is that correct? If you ruled in that way, that would knock out the claim related to the right to it, but it would not knock out any potential ancillary claims for recovery of any costs or attorney's fees that would be associated with the defense of this case. The indemnification agreement is broader than simply the dollar amount that's paid in the franchise fees. That's our argument, that we think that we should be heard in the trial court on the issue of them compensating the county for the costs of being involved in this case to begin with. And we believe that the original indemnification language is broad enough to support that. They were supposed to take any of it. Why do you think it's broad enough to support that? Normally an indemnification clause relates to indemnification for costs, fees, expenses, damages, whatever you want to call it, relating to torts, not relating to breaches of contracts. The failure to pay a franchise tax, I'm having a hard time understanding as a tort, unless it was some sort of fraud, and I don't know that I've heard or seen that phrase used. Your usage of the term indemnification seems somewhat broad, maybe even overly broad. Could you explain to me why you think that the indemnification clause, which is contained in the agreement, relates to something that relates to a breach of contract as opposed to a negligent act that results in, based upon what goes down joint in several liability, or the damages that a plaintiff in a negligence suit would seek? This is in a contract, referring to contract terms, with an unlimited but not limited to expansive agreement on their part, and Comcast, as a successor in interest, agreed to be bound by that. It isn't limited to a tort or a negligent act. It basically is anything related to the award of the franchise. That award of the franchise and the continuation of that award of the franchise is exactly what this case is about and exactly what that agreement is about. I would suggest to the Court that the agreement itself contains the authority to apply the indemnification clause because that agreement and the litigation surrounding it is exactly what this case is about. I see my time is up. Yes, your time is up. You'll have an opportunity to make rebuttals. Thank you. Thank you. Mr. Rosener? Good morning. My name is Ron Rosener, and it is my pleasure this morning to represent Comcast before you. So may it please the Court, this case all along, Comcast has felt itself as a stakeholder. It doesn't have any beef with the county or beef with the village. Whoever is entitled to the franchise fees is fined by us. Unfortunately, as you see in the record, that the village was incorporated in 2007 and Comcast continued to pay franchise fees to the county. Why did they do that? Well, we have a franchise agreement, we thought we did, which is why we filed the case in the first place, because of these competing interests and the pressures that Comcast received from both municipalities, both of its customers. We needed a declaration. And so we filed such a complaint to figure out or have the Court adjudicate who we owe these fees to. In this case, we take a position that as a stakeholder, but we don't ignore the other underlying... Well, what's the difference between being a stakeholder and filing an interpleader action? Is there any difference? I don't think so. I'm sure there are, but for purposes of... Well, usually an interpleader action is where the party interpleading takes a sum, deposits it with the circuit clerk, and then says, you know, have at it. And that isn't exactly what happened here, because there appears to have been funds that were distributed, and then credits were given later on. Is that correct? Essentially, your Honor, that is correct. But the interpleader and the whole case was filed essentially after the Fed. Remember, if you take the five years from December of 2007, add five years, that's a 2012 situation. This is a 2013 case. All the water had gone under the bridge. By the time this case came to fruition, even the five-year period under Section 1095 had lapsed. And so it was a theory. The second count of our complaint, the interpleader, was later dismissed on motion by the county. There was no funds for us to put into the bank, as you can see. But we put that forth as a theory. It became unnecessary. The issue is who do we owe the fees to or which of the villages are entitled to the fees. But we take a first look at 1095, which says annexation. It does not say incorporation. As Mr. Lovell suggested, the two terms are essentially the same functionality-wise. But it says annexation. So Comcast looks at the statute and says, oops, who do we pay? Logically, one would be well advised to continue to pay the county for at least five years. But we don't need to get to that point. Although the trial court at one point did get to and inferred that annexation meant an equal incorporation, which I don't disagree with that decision. I mean, you can read the statute as strictly as you wish, or what did the legislature intend or what did it really intend. And sometimes that's our function. But we don't need to get there because the trial court ultimately found that we back up. 1095 does suggest to us, though, that there is something about expiration of the agreement. And in this case, we have a 1988 franchise agreement followed by a series of resolutions. Let me defer or refer to the county's argument for a moment. There is no course of conduct, if you will, in the record of this case. The course of conduct between the parties is we've got a cable television system that's installed. You haven't renewed the agreement. And we continue to operate under Section 546 of the U.S. Code, as discussed in my brief. And we continue to operate because the county extended, by resolution, the annexation agreement. If that in a course of conduct, which we were allowed to do. Did I say that again? In the franchise agreement, sir. Thank you. We operated under 546 and under the resolutions, I suppose, that were passed. But is that a course of conduct that takes this case any place other than just we continue to pay you fees and the franchise agreement is extended? Where does a course of conduct other than that arise that is pivotal at all to this case? Comcast is also confused because Section 11 of the franchise agreement also says this agreement will continue even if there is an incorporation. So Comcast is faced with a contract and a statute that says thou shalt pay the county. But Campton Hills takes a different position and puts the arm on Comcast for the 2009 forward or 8 forward franchise fees. And by so doing, that precipitates this case. But let me address the indemnity issue, please. And while I don't know that I need to make a long argument, because I believe Your Honor has come to the point, that is, while this case had within it statutory construction, it also has construction of a statute of the contract. And the contract says, including but not limited to, and then it goes through to tell us what kinds of things this indemnity arises out of. And again, as you pointed out, what the clause says is including but not limited to installation, operation, maintenance. And further in Section 4, the indemnity section, it talks about we shall, Comcast shall, insure for those things, and which we can. But how could we insure for this kind of circumstance? Where in that sentence or that clause, where does it suggest that things other than operation of the system, maintenance of the system, installation of the system? But isn't this all part of an operation? I mean, isn't this what you do? You initially put the system in. It's a technological challenge, so bear with me. Basically, you put the system in, the system runs, fees are generated, fees are paid. It's oversimplification, but that's it in a nutshell. So why isn't that continuing process part of this global term of operation? Because I think operation, Your Honor, is turning it on, turning it off kind of operation. The functionality of the system itself, not everything that happens in the planet is under the word operation. Also, that word operation is sandwiched in between the terms installation and maintenance. So what we have here is a clause which defines itself. By context? I'm sorry. By context? Yes, ma'am, absolutely. We know that the expression of one thing excludes others. And by that maxim, we use that maxim to resolve ambiguities. We don't use that maxim to create an ambiguity. And that's what the county would have you do. Is this indemnity agreement, which requires insurance? What are the things that we really are indemnifying? Plus, as I believe Your Honor saw, that this is not negligence. We have the Mormon decision, which tells us if there's a contract out there, it's a contract action. And so we literally die by the Mormon tank company decision. So there can be no negligence in this case. I mean, what would happen if the county brought a negligence claim against Comcast under these facts or these circumstances? It would be just because there is no negligence. It is at best, because of the village, a breach of contract case at best. It is not a tort case. And the things that are in the indemnity, the operation, maintenance, installation, are things that one would think would be in the form of negligence from third parties. I have a question. Yes, ma'am. You know, it's 2007, Campton Hills Incorporates. Yes. I'll give you the rest of 2007. But 2008, there appears to be a fork in the road. So who do you pay, the village of Campton Hills or Kane County? Why is it that Comcast waited so long to sort of throw their hands up and say, you court, tell me, who do I pay? The practical answer is both units of local government were, to whom we are beholden. It's a franchise. You don't mess around. Both units of local government are putting the pressure on Comcast at this point. What we all thought back in 2007, I think it's fair to say, everyone thought that the county would get them for five years. But what ultimately happened is I think Campton Hills read the statute again, and the record reflects there's a couple of letters in there from Campton Hills making their demand. So now we're in a position, in an awkward position, where we hold the franchisees and the franchisor is now claiming that we owe them. So we continue to pay. It would look like, Your Honor, under the federal statute, under even the franchise agreement and the like, it would look like the best advice would be for Comcast to pay the county. But because of those pressures and because of what's right and wrong, the county sought, or the Comcast sought judicial consent. Right, but not until 2013, right? The case has a 2013 number on it. See, that was the question. Between 2008 and 2013, what? Six years to figure out you didn't know who you were supposed to pay? I mean, is there some credibility to the county's position that, look, you kind of created this problem, so they're entitled to some compensation? I think the county, as much as anybody, created this problem by them demanding the fees. But the question is, why? What was the reason for waiting six years? I mean, were there ongoing agreements, tacit agreements? No. There were no agreements, ma'am. There were ongoing discussions, and those discussions failed. I was part of those discussions, but they failed, and therefore we then had to elect a judicial. But we did, we were under negotiation with predominantly the village. Mr. Roser, the question I have, and I was hoping you would address, when you look at the franchise agreement, the original one that you entered into, and you correctly pointed out that it provides that these payments will continue, even if there is an incorporation. And so the question is, is that does the county's, did the county's resolution that they passed unilaterally extend this contract? Yes, Your Honor, they unilaterally did that. That is a good point. Where did Comcast agree in an extension to an indemnity? We didn't. Don't you need a writing for an indemnity? You certainly do. And there was no agreement from Kane County, from Comcast, Heather. They were under continuing discussions, as the record would reflect, and the county admits. There were continuing discussions about a new franchise agreement. I mean, the franchise agreements you would make today are very dissimilar from those of 1988. And the extensions, by resolution, we must keep in mind, or should look at that which needs extension has already expired. And so that if it has expired, it needs extension. And those extensions were ongoing. Although there is a lapse, there is no 2005, 2006, or 2007 resolution. And two of the resolutions, I think 2010 and another one, were actually passed after the expiration had occurred, attempting to be expo facto, I suppose. But that which needs an extension has, I believe, expired. Thank you, sir. Thank you. Mr. Simon? Good morning. Good morning. You may proceed. Thank you. May it please the Court. The village has presented you with two ways to find in favor of the village. On the village's cross appeal regarding the issue of whether or not Section 51095, the county's code, applies to incorporation, we would argue that the trial court erred in this decision, finding that incorporation should be read into the statute and treated identically to annotations. Did you win the judgment in this case? We won the ultimate judgment in the case, yes. I don't believe that you're allowed to appeal a judgment. You may, in your appellee's brief, suggest alternative forms of relief to affirm the trial court. But the Chicago Tribune-College of DuPage case was a similar situation where the Tribune was claiming a different ground than what the trial court found relative to the Freedom of Information Act. And the Chicago Tribune was asking the appellate court to rule in its favor, even though it got what it asked for and basically said, we don't do things like that. So unless you can tell me that there was some portion of the judgment that was adverse to you and that your cross appeal relates to that, your cross appeal really is not a cross appeal. It is essentially a request for alternate reasons for affirming the trial court's judgment. Now, if you want to argue that, that's fine. But I don't want you to think that we're going to enter an alternative ruling on a judgment. It's either going to be affirmed for what we deem to be appropriate. It's not going to be based upon what you think it should be affirmed at. Okay? I will concede that. Thank you. So as an alternate reason for affirming the judgment of the trial court, Section 51095 should not apply where there's an incorporation. Where there's an incorporation, the village should begin receiving franchise fees upon the execution of a franchise agreement with the cable operator, in this case Comcast. The franchise agreement was executed on December 31st, 2017. I'm sorry, 2007. And as a result, the village should have started receiving franchise fees starting in 2008 and for all the time that succeeded that. The county argues that incorporation and annexation are equivalent to each other because they both deal with territory being disconnected from the county. That's not the language the statute uses. The statute is not unclear or ambiguous, and so therefore the court shouldn't read that into the statute. As to the ultimate judgment of the trial court, the village would ask the court to affirm the judgment of the trial court, finding that the county's franchise, as it relates only to the village franchise area, expired in November of 2007. The county adopted an extension resolution in November of 2006. The village was incorporated in April of 2007, whereupon the village became the franchise authority, and the cable operator was entitled to continue operating under the terms of the county franchise until that franchise expired. Because the village was incorporated, and the village became the franchise authority, the county lost the ability to continue extending the franchise within the village franchise area. And so upon the expiration of the county franchise in November of 2007, the county should stop receiving franchise fees under 51095. The village and Comcast adopted a franchise agreement on December 31, 2007, which is contrary to the course of conduct argument that the county has presented, and essentially set the terms by which Comcast was to operate within the village. What exactly does a franchise agreement entail? Is it nothing more than imprimatur? You can do it. Go do it. And there's no dedication of public property. There's no overseeing. There's no regulation. All you do, or I should say all your client does, is it collects or deposits the check. Is that correct? I don't agree with that, Your Honor. Well, what does a franchisor do to have some quid pro quo relative to consideration for a franchise, other than allowing it in its area? The village, or any franchise authority, still has the right to regulate the manner in which the cable operator places facilities in the public right of way. So they do have regulatory oversight over where the facilities are located, how they're buried, and whether or not they need to be repaired. So it relates to the fact that the franchisor is allowing the use of the public right of way. It's an exercise of the village's regulatory authority over the right of way. If for some reason Comcast was able to stick a microwave tower someplace outside of Campton Hills, and was able to direct signal into Campton Hills, and did not use your right of way, would they still have to pay a franchise tax? What you're describing is essentially DirecTV or Dish Network, and subscribers to those systems do not pay a franchise fee because there's no use of the right of way. When the right of way, whose right of way was it that was being used when the right of way was the county right of way, or put another way, I'm not sure that it would be called the counties. It's just unincorporated. Maybe the county has jurisdiction over unincorporated right of ways. Is that the situation? The statutory scheme presented by federal law and state law grants to counties with respect to unincorporated territories and municipalities in relation to incorporated territories the exclusive right to collect franchise fees from within the jurisdiction. Once the city was incorporated, that right of way was transferred over title-wise to the city? Whether or not title-wise jurisdiction over the maintenance of those rights of ways within the village's jurisdiction became village highways. Did it occur by operation of law, or did it occur by a requirement that deeds be executed? By operation of law. Do you have any identification agreement with Comcast? There is a provision in the franchise agreement between the village and Comcast that expresses that if Comcast has to pay the county the franchise fees and otherwise pay the village, that the village would have to reimburse Comcast. So that Comcast was made whole. That doesn't apply as a result of the trial court's ultimate judgment because the franchise fees are owed to the village, and so there is no notification provision that applies. To address one of the issues that arose during an earlier argument, the county's franchise agreement says that the upon incorporation of franchise fees shall continue to be paid to the extent and term allowed by law. It is important to not leave that out because to the extent and term allowed by law requires you to look and see whether or not they're allowed to continue receiving them under the law. And if the court decides to apply Section 51095, the law says they are no longer allowed to continue collecting franchise fees once the franchise expires by its own terms. Would it expire if the county didn't own title to the right-of-way? It expires according to the plain language of the agreement and because when you adopt an extension, an extension is a modification of the terms and so therefore it's no longer operating by its own terms. It's being changed. You talk about when it expires, but as I understand, King County's argument is it's not just about the writing, it's about this continuing course of conduct that gives rise to the counterargument, it never expired. We continue to go along with that, so how do you respond to that? I have two answers. First, because the county is not in the rule, it can only engage in conduct that is authorized to engage in by law. And because it lost the authority to exercise franchise power once the village was incorporated, it didn't have the statutory authority to engage in that conduct. It was engaging in unlawful behavior. Are you citing to Dillon's rule? Is that what you're arguing? That is found in Dillon's rule, that's correct. But they lost franchise authority once the municipality, once the village was incorporated. The statute says that once the village is incorporated or once it's annexed into a village, the village becomes the franchise authority and exercises the franchise power. The other answer I have for you regarding the course of conduct is that Comcast's course of conduct is not the same as the county's because Comcast deliberately and voluntarily entered into a franchise agreement with the village. And you can't have two agreements apply to the same property. That's the beauty of it. That's why we're in court, or why you're in court, and why we're here. Let me ask you the same question. Why wait so long? Why not just go in in 2008 and ask for a declaratory judgment or some type of precipitating opinion that would govern everyone's? I did not represent the village at that time, so I agree. Not my issue, not my problem. They should have asked me. We weren't affiliated with the village at that time, so I can't give you a good answer in the first person. Fair enough. Why did you wait until March 12th to, in fact, file your cross-appeal in this case after having received notice of the county's appeal? We won the ultimate judgment, and we weren't going to appeal it at all because we'd won. But since the county had appealed, we wanted to present the court with an alternate remedy that was also in favor of the village at any even more threshold issue that didn't require interpretation of annexations and resolutions and whatnot. We just argued that the statute doesn't apply to all of them. We should proceed under the terms of the village franchise. To take that one step further, I believe the notice of appeal was sometime in the first two weeks of January.  Will you have 10 days after notice? So 10 days after notice would be sometime in the latter part of January or the early part of February. So when Justice Bridges asked you, why did you wait until March, he was essentially asking you, didn't you file it too late? Well, our motion for leave to file acknowledges that. I'm sorry? I filed a motion for leave to file the cross-referral. And it was granted? And it was granted. Okay. So, yes, we acknowledge that. Gee, we're more magnanimous than I thought we were. Guess who wasn't on that panel. Yeah. Okay, thank you. Thank you. Thank you. Obviously it was a motion to call because it was not assigned to me. Yes, Mr. Lowell? Yes. You may proceed. Thank you, Judge. Very briefly, both Comcast and the county were operating under the county extensions of franchise agreement in good faith. And we're continuing to do so. The Campton Hills takes on the incorporation, where the statute applies to it, by the trial court's decision, subject to the agreement, the existing agreement the county has with the franchise holder. That agreement is embodied by the course of conduct where Comcast, in good faith, continued to provide services and pay fees under the extended franchise agreement as extended by the county. There is nothing in the statute, and I'm unaware of any law, that bars the county from extending their franchise agreement. There isn't anything in the statute that says the county automatically can't extend. If you can do this, then why even have a limitation of five years? I believe, Judge, that the sound reason, okay, would logically be you would have a limitation there to prevent a county from endlessly extending. Maybe I'm wrong, but that's what I got the impression. You said there's nothing that prohibits you from extending it. Until you hit the hard cap. You mean until you hit five years? Correct. And by consensus, I think everybody's in agreement. Well, does the extension have to provide that the contract is extended for five years, or are you allowed, as I think you're implying, that you're allowed to make five one-year extensions? Yes. There's nothing in the statute that bars the extension until you hit the wall of five years. Parties are allowed to extend agreements. Since 1988, that had been done by the county. And, again, your extension is hooked on to a course of conduct. Yes. Absolutely, Judge. Yes. And if the extension took place after the expiration date, is that an extension or is that a renewal? I believe that it would be an extension. And not a renewal for the reasons that, actually, Comcast Council has pointed out, okay, that we were negotiating as reflected in the resolutions on the renewal. So those were just extensions. That would not be a renewal. A renewal would take signatures by both parties, as correctly pointed out by Comcast, and those were under discussion as reflected in the resolutions where the county extended. So that would be an extension, not a renewal. And I don't want to sound petulant, but I just want to make sure that I understand that the trial court didn't buy that argument. Is that correct? Didn't the trial court say that it terminated at the end of the year? Yes. The trial court applied a basically only the document. The trial court did not address the course of conduct and did not accept the course of conduct argument. Yes. Absolutely. That's why we're here. So theoretically, there was no franchise agreement for the month of December of 2007. I would say that there is a franchise agreement. I mean, you would, but the trial court's interpretation? Correct. There basically was no agreement for December, and then it would start again in January. I mean, that was the trial court's logic, right or wrong. Correct. Preferably wrong. No, no. You're correct. You're correct in your statement. Well, to follow up with what Justice Clarence said, whether or not it's an extension or renewal, how do you address the fact that in 2006 the county passed no such resolution? So wouldn't it then be a renewal requiring the signatures you talked about? I do not believe that it would be a renewal. A renewal would take a separate document with the signatures by Comcast Corporate and the county. I believe that the franchise agreement by operation, I don't know why the county in 2006 did not pass that, but I will state that under federal law, as recited by Comcast, the expired franchise agreement is extended under federal law because a provider must pay their franchise fees to somebody. Therefore, I believe that under the statute that's cited in Comcast's brief, federal statutes require an expired franchise agreement to be extended on its original terms until such time as it's renewed or extended again by the party. So I believe that's the authority for 2006, and any time that there wasn't an actual resolution passed, under federal statutes it would be required to be extended whether the county passed a resolution or not. In subject to any other questions from the court, for all the reasons that we've stated, we're requesting that our appeal be granted for the county. Thank you. Based upon the protocols, Mr. Simon, even though I told you about the cross-appeal, you supposedly still have some time left. Do you want to give us box scores for the Cubs or something like that? Thank you. You have five minutes for rebuttal if you wish to take it. Thank you. To answer the question you posed, Mr. Lulvis, the statute does place limitation on the ability of the county to unilaterally adopt a series of one-year resolutions to roll over the franchise one after the other. To clarify, the county did adopt a resolution in November of 2006 to extend the franchise for one year until November of 2007. The intervening event, which changed the whole game, was that the Village of Camden Hills was incorporated in April of 2007, whereupon the Village became the franchise authority. It had the exclusive right to engage in franchise power. Well, you said it was incorporated. When did it pass its ordinance? The agreement was adopted on December 31, 2007. I'm talking about Camden Hills. I've forgotten when it was, but I believe the ordinance that Camden Hills passed relative to authorizing the payment of franchise fees to it was subsequent to the date of incorporation, was it not?  Okay, thank you. And the period in dispute for the franchise fees is January 1, 2008, and five years have elapsed. The statute says that counties are allowed to continue to receive franchise fees under the then-existing agreement until it expires by its own terms. An extension, whether it's unilateral or bilateral, is a modification. It's very clear it does not operate under its own terms, so therefore any effort to extend it is a modification, and that in and of itself triggers the expiration or termination of the franchise fee payments to the county. And the Village should receive all the franchise fees from January 1, 2008 and thereafter, consistent with what the trial court found. And for that reason, we're asking the court to affirm the trial court's decision. Thank you. We'll take the case under advisement. There are other cases on the call. There'll be a short recess.